Mr. Justice Merrick
delivered the opinion of the court:
This was an indictment for conspiracy to defraud the United States under Section 5440 Bevised Statutes. At the trial, for the purpose of proving the alleged conspiracy as against the traverser Gunnell, the United States offered, amongst other things, to prove that after the abstraction of certain coupons from the Patent Office (the procurement and disposition whereof were the alleged objects of the conspiracy), the Commissioner of Patents and his chief clerk had conversations with the traverser Adriaans, in which they informed him of the abstraction of the coupons, and asked him from whom he had purchased those of which he was making sales, and that beyond stating that he, Adriaans, had never obtained coupons in any other way than by purchase from the Patent Office in the regular manner, and that he had none not obtained in this manner, he, Adriaans, declined to give any information, or to make any statement, although the said Commissioner and chief clerk stated to him that sales which he had made largely exceeded his en *197 tire purchases from said Patent Office. To the admissibility of which evidence as against Gunnell he excepted. The United States further offered evidence, that subsequently to the foregoing conversation, the said Adriaans voluntarily appeared before a board convened by order of the Secretary of the Interior to investigate the matter of abstracting said coupons, and after being voluntarily sworn, and being requested by said board to inform them from whom he obtained the coupons or orders of which he had been making sales, he declined to answer any questions or give any information in that behalf, on the ground that it related solely to his private business; and being informed by said board that the traverser Gunnell had stated that he had obtained from Adriaans $25 worth of coupons, and being requested to state whether this were true, he declined to answer the question for the same reason. To the admissibility of this conversation as against the traverser Gunnell, he likewise excepted. But the court overruled both execeptions, and admitted the evidence to go to the jury.
Whilst all the acts and declarations of one alleged conspirator may be given in evidence against himself, no declaration of his can be given in evidence against his co-defendant, unless there has first been some evidence offered tending to prove a conspiracy and to implicate such co-defendant and then only those declarations are admissible which were made during the progrees of the conspiracy and in furtherance of its objects. Declarations which are merely narrative of past occurrences are to be rejected. (1 Greenleaf’s Evidence, sec. 111). But the vice of the offer here was not merely the offer of declarations made after the fact, but it was to make an emphatic denial of guilt by the traverser Adriaans, the foundation or pretext for placing before the jury charges or insinuations embraced in the language of his interrogators, in order to affect Gunnell. The denials of guilt on the part of Adriaans certainly did not tend to prove that Gunnell had conspired with him, nor were the prefatory conversations to his denials necessary to explain their meaning. When analyzed, therefore, the *198 whole of the evidence offered and objected to, as above recited, was purely hearsay, and under no circumstances admissible to prejudice Gunnell, and should have been limited by the court in its operation to Adriaans alone.
Evidence was given for both traversers of previous good character, and the court was asked to define the function and weight of evidence of good character. The trial justice seems to have designed to convey to the minds of the jury that the only office of the proof in a criminal case is “that in a doubtful case, good character turns the scales in favor of the defendant;” or, as in another part of the charge, the idea is again expressed: “The instruction is to the effect that if there is a doubt in the case, you should resolve the case in their favor on the ground of their previous good character.” This, we think, is too restricted a view of the office of the proof of a traverser’s good character. In the laws of all civilized countries, under various aspects of the question, good character is recognized as an element, a very potent element of defensive proof, going directly to the credibility of the accusing witness, to the intrinsic value of the inculpating testimony, to the probabilities of mistaking memory, of mistaken identity, of innocent motives in actions apparently culpable, and in many instances amounting in and of itself to a complete defense, according to the nature and circumstances or enormity of the charge, unless overborne by the number no less than by the general credibity of the prosecuting witnesses.
This is fully illustrated in the law of evidence in regard to treason, where the enormity of the offence forbids the presumption of patriotic motives to be overborne unless by the positive testimony of at least two witnesses. The same principle ran through the Mosaic law; and it has its place in the teachings of the New Testament. By the civil law and by the canon law more than one witness is necessary to condemn; and especially in the canon law is the doctrine avowed and practiced upon, that in matters of moral turpitude character, even that which is imputed from tbe possession of exalted station, must be overcome by positive proof *199 from two, three, or even as many as five witnesses in some cases.
Without the security which character furnishes, where would be safety against falsehood for those whose positions and whose duties make them objects of envy, hatred or revenge ?
The common law, then, is only following the general expression of natural reason when it assigns a positive defensive force to the proofs of good character, far beyond that of being a mere make-weight in the resolution of a doubt.
Character is entitled to consideration in every criminal cause, and it is for the jury to assign its value upon a comparison of all the facts and circumstances which envelope the transaction. Whether in any particular instance it will avail to satisfy them of the innocence of the accused, or whether it will suffice to create or confirm a rational doubt of guilt, or whether it be not adequate to overbear in any respect the weight of adverse testimony, must be left to their sound discretion, under proper advice.
Finding, as we do, that in the charge to the jury, the probative force due to evidence of good character was too much restricted, the judgment of the Criminal Court will be reversed, and the cause remanded for another trial.